**The PEOPLE of the State of Colorado, Complainant,**

v.

**Lousenda D. STILLMAN, Respondent.**

**No. GC97B121.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

March 20, 2002.

Opinion by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board members, KATHLEEN KILLIAN and RICHARD P. HOLME, both members of the bar.

## OPINIONS AND ORDER IMPOSING SANCTIONS

*SANCTION IMPOSED:* **ATTORNEY SUSPENDED FOR TWO YEARS**

A trial pursuant to C.R.C.P. 251.15 was held on December 12, 2001, before the Presiding Disciplinary Judge ("PDJ") and two hearing board members, Kathleen Killian and Richard P. Holme, both members of the bar. Debora D. Jones, Assistant Attorney Regulation Counsel, represented the People of the State of Colorado (the "People"). The respondent, LouSenda Stillman ("Stillman") did not appear either in person or by counsel.

The Complaint in Case No. GC97B121 was filed on November 20, 1997. Stillman filed an Answer on January 26, 1998. A two-day trial was set to commence on August 26, 1999, which was subsequently vacated upon the People's motion, the parties having reached an agreement pursuant to C.R.C.P. 251.13(c).[1] The Complaint in Case No. 01PDJ025 was filed on March 14, 2001 and Stillman filed an Answer on April 30, 2001. Case No. 01PDJ025 was consolidated into Case No. GC97B121 upon the People's motion by Order dated April 19, 2001.[2]

Stillman did not respond to the People's interrogatories, requests for admissions and production of documents. The PDJ granted

---

1. The PDJ approved a Diversion Agreement on August 18, 1999, amended March 21, 1999. Thereafter, the People moved to terminate the Diversion Agreement due to Stillman's material breach of its terms. Stillman did not respond, and the motion was granted on January 29, 2001.

2. In a separate matter, No. 01PDJ069, the PDJ granted Stillman's request that she be transferred to disability inactive status on July 9, 2001, and suspended the pending disciplinary proceedings. On September 21, 2001, the PDJ lifted the stay on the proceedings pursuant to C.R.C.P. 251.23 due to Stillman's failure to submit to an independent medical examination. Stillman remains on disability inactive status.

the People's Motion for Sanctions based on Stillman's failure to comply with the People's outstanding discovery requests and ordered that Stillman would only be allowed to testify on her own behalf at trial and cross-examine the People's witnesses.

At trial, the People presented testimony from John Brock, Emily Magnin, Donae Linde, Scott Garber and Susan Allen (f/k/a Susan Groller). Exhibits 1 through 17 were offered by the People and admitted into evidence. The PDJ and Hearing Board considered the People's argument, the exhibits admitted, assessed the testimony and credibility of the witnesses and made the following findings of fact which were established by clear and convincing evidence. Stillman did not appear and therefore no evidence was received on her behalf.

## I. FINDINGS OF FACT

Stillman has taken and subscribed to the oath of admission, was admitted to the bar of the Supreme Court on October 27, 1988, and is registered upon the official records of this court, registration number 18005. Stillman is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

### The Brock Matter

John Brock met Stillman in February 1997. Shortly thereafter, Brock invited Stillman and Stillman agreed to move into Brock's apartment. Stillman agreed to trade legal services in exchange for rent. Brock returned home a few days after Stillman moved in to find that Stillman had caused damage to his apartment and personal belongings. Brock asked Stillman to leave and she refused. The police took Stillman into protective custody. The extent of damage Stillman caused to Brock's apartment necessitated Brock's filing an insurance claim for damage done to the carpeting, window screens and coverings, blinds, computer, and personal belongings, resulting in a $500 unreimbursed expense to Brock.

### The Magnin Matter

Stillman was retained by Emily Magnin in April 1994 to file a petition for dissolution of marriage. Magnin paid Stillman $1,500. Stillman filed the petition in El Paso County in May 1994. Thereafter, counsel for the estranged husband filed a petition for dissolution in Adams County and moved for change of venue, which was granted. On September 27, 1994, Stillman appeared for a pretrial conference. The court issued orders as to mediation, property valuation, witness endorsement and financial matters. Both sides were granted five days to submit names for the appointment of a *guardian ad litem*. Stillman failed to provide the names as ordered. Moreover, Stillman did not discuss the pretrial order with Magnin. Magnin attempted but was unable to communicate with Stillman about her case from mid September through December 1994. She left voice messages and went to Stillman's office, only to find that Stillman had moved and taken her client file. Magnin was in an exceptionally vulnerable frame of mind, and was distraught over Stillman's disappearance. Magnin hired other counsel in December 1994. The client was not able to retrieve her file from Stillman. In August 1996, Stillman sent Magnin a letter indicating an outstanding balance owing for attorney's fees. Stillman has not communicated with Magnin since the invoice sent in 1996.

### The Linde Matter

Donae Linde retained Stillman in connection with a dissolution proceeding in late August 1998. Linde's ex-husband had filed a motion to reduce child support. A hearing on the motion was set for September 24. Stillman filed a motion for continuance on September 3, 1998, due to her client's health issues. The court denied Stillman's motion for continuance, and the hearing was held on September 24. Neither Stillman nor her client appeared for the hearing. The court attempted to call Stillman but was unable to reach her. The ex-husband's child support obligation was reduced following the hearing. When Linde learned from her ex-husband that his child support had been reduced, she unsuccessfully attempted to contact Stillman. Linde was told by Stillman's secretary that the ruling decreasing child support was erroneous and would be withdrawn. Stillman filed

a motion for reconsideration, which the court denied.

Over the next two months, Linde continued to try to reach Stillman without success. Linde retained new counsel, and at a hearing in February 1999, Linde's child support award was increased due to changed circumstances. The court did not modify the child support order resulting from the September 24, 1998 hearing.

### The Groller Mater

Susan Groller retained Stillman in October 1998 to obtain a restraining order and dissolution of marriage. Stillman obtained a temporary restraining order for Groller. Groller was fearful of her estranged husband's actions and Stillman was aware of this. Stillman did not take any action to initiate a dissolution proceeding, nor did she takes steps necessary to make the temporary restraining order permanent. Stillman stopped communicating with Groller. Groller left numerous messages for Stillman over several months but was unable to reach her. Eventually, Groller requested an accounting and Stillman failed to provide one until more than three months after it was requested, and only after Groller filed a request for investigation with the Office of Attorney Regulation Counsel.

## II. CONCLUSIONS OF LAW

### The Brock Matter

■ The Complaint in Case No. GC97B121 alleges that Stillman's conduct with regard to the Brock matter constitutes a violation of Colo. RPC 8.4(h)(it is professional misconduct for a lawyer to engage in any other conduct that adversely reflects on the lawyer's fitness to practice law). To find a violation of Colo. RPC 8.4(h), there must be "proof of conduct, the totality of which establishes that the lawyer engaged in conduct which reflects that he or she lacks the personal or professional moral and/or ethical

qualifications required of those authorized to practice law. Conduct involving violence, lack of honesty, violation of trust, serious interference with the administration of justice, criminal endeavors, or comparable misconduct is required to establish a violation of Colo. RPC 8.4(h)." *People v. Jaramillo,* 35 P.3d 723 (Colo. PDJ 2001), 2001 Colo. Discipl. LEXIS 92, *8-9, *citing People v. Theodore,* 926 P.2d 1237, 1242-43 (Colo.1996)(holding that attorney's engaging in conduct involving dishonesty amounts to conduct that adversely reflects on his fitness to practice law); *People v. Good,* 893 P.2d 101, 104 (Colo.1995)(holding that conduct of a sexual nature with regard to a client violates prior rule DR 1-102(A)(6)). The knowing and intentional destruction of another's property by a lawyer, without justification, demonstrates a lack of respect for and/or an inability of the individual to conform their conduct to the dictates of the law and is conduct which reflects that the lawyer lacks essential personal qualifications required of persons licensed to practice law.[3]

■ The Complaint also alleges that Stillman's conduct violated C.R.C.P. 241.6(5).[4] That provision states:

Misconduct by a lawyer, individually or in concert with others, including the following acts or omissions, shall constitute grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship: (5) Any act or omission which violates the criminal laws of this state or any other state, or of the United States . . . .

■ The Complaint does not, however, specify any specific criminal statute allegedly violated. C.R.C.P. 251.14(a), the rule that governs the contents of disciplinary complaints, provides in part: "[t]he complaint shall set forth clearly and with particularity the grounds for discipline with which the respondent is charged and the conduct of the respondent which gave rise to those

---

3. Stillman's violation of Colo. RPC 8.4(h) constitutes an additional violation of Colo. RPC 8.4(a)(it is professional misconduct for a lawyer to violate or attempt to violate the rules of professional conduct). It does not, however, impact

on the level of sanction assessed by the PDJ and Hearing Board.

4. C.R.C.P. 241.6 was repealed and reenacted as C.R.C.P. 251.5 effective January 1, 1999.

charges." [5] *See People v. Lynch,* 35 P.3d 509, 513 (Colo. PDJ 2000), 2000 Colo. Discipl. LEXIS 28. The rule requires that the charging document in a disciplinary case set forth both a factual basis for the charges and the legal basis upon which the People seek discipline. *Id.* Procedural due process requires fair notice of the charge. *Id., citing In the Matter of John Ruffalo, Jr.,* 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). Fair notice of the charge envisions not only a recitation of the facts revealing the offensive conduct but also the identification of the legal prohibition which proclaims such conduct violative of the rules applicable to a lawyer's conduct. *Ruffalo* at 551, 88 S.Ct. 1222; *see e.g. In the Matter of Andrew L. Quiat,* 979 P.2d 1029, 1038 (Colo.1999). Accordingly, C.R.C.P. 241.6(5) does not provide sufficient grounds for discipline upon the allegations stated in the Complaint, and is accordingly dismissed.

### The Magnin Matter

 In the Magnin [6] matter, Stillman neglected her client's legal matter in violation of Colo. RPC 1.3(a lawyer shall act with reasonable diligence and promptness in representing a client) by failing to discuss with the client the issues raised in the court's orders as to the appointment of a *guardian ad litem,* mediation, property valuation, witness endorsement and financial matters. Stillman failed to communicate with the client for a period of three months in violation of Colo. RPC 1.4(a). Moreover, Stillman moved her office during that time frame without notifying her client. Notwithstanding several attempts by the client to communicate with Stillman during that period, Stillman did not inform the client concerning either the facts of the case or Stillman's whereabouts. In essence, Stillman simply disappeared. The timing of her disappearance was at a particularly critical period of the proceedings. The extent of Stillman's neglect of her client rose to the level of abandon-

ment. "To find abandonment rather than merely neglect, there must be proof that the attorney—during a given time period—was required to accomplish specific professional tasks for the client, failed to accomplish those tasks, and failed to communicate with the client." *People v. Powell,* 37 P.3d 545, 2001 WL 1636751, *3 (Colo. PDJ 2001), *citing People v. Carvell,* No. 99PDJ096 (Colo. PDJ September 11, 2000), 2000 Colo. Discipl. LEXIS 26. The proof must objectively indicate that the attorney has deserted, rejected and/or relinquished the professional responsibilities owed to the client. *Id.* Such objective proof is present in the Magnin matter.

 Stillman's abandonment of her client, effectively terminated the attorney client relationship. Stillman's failure to provide Magnin with the file upon termination constitutes a violation of Colo. RPC 1.16(d)(upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned).

### The Linde Matter

 In the Linde matter, Stillman's failure to attend the September 24 hearing, constitutes neglect in violation of Colo. RPC 1.3(neglect of a legal matter). Stillman's subsequent failure to return Linde's telephone calls over a two month period constitutes a violation of Colo. RPC 1.4(a)(failure to communicate).

### The Groller Matter

 Stillman's failure to communicate with her client for several months after she was retained and after she had commenced a temporary restraining order proceeding constitutes a violation of Colo. RPC 1.4(a)(failure

---

**5.** C.R.C.P. 241.12, in effect in on November 20, 1997 when the Complaint was filed, contained identical language. C.R.C.P. 241.12 was repealed and replaced by C.R.C.P. 251.14 effective January 1, 1999.

**6.** Upon complainant's motion, the alleged violation of Colo. RPC 8.4(d)(engaging in conduct prejudicial to the administration of justice) in the Magnin matter was dismissed at the commencement of the hearing.

to communicate). Stillman's failure to promptly provide an accounting upon request is a violation of Colo. RPC 1.15(b)(failure to provide a timely accounting). Stillman's failure to timely follow through with the restraining order or commence a dissolution proceeding on behalf of her client, both tasks she had agreed to perform, constitutes neglect in violation of Colo. RPC 1.3.

### III. SANCTION/IMPOSITION OF DISCIPLINE

■ The evidence established that Stillman's misconduct constitutes one violation of Colo. RPC 8.4(h) and Colo. RPC 8.4(a), two cases of neglect in violation of Colo. RPC 1.3, and in one of these two instances, the neglect rose to the level of abandonment, three cases of failing to communicate with clients in violation of Colo. RPC 1.4(a), one instance of failing to provide an accounting in violation of Colo. RPC 1.15(b) and one instance of failing to return a file upon termination in violation of Colo. RPC 1.16(d).

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") is the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct. ABA *Standard* 4.42 provides that suspension is generally appropriate when:

> (b) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
>
> (c) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

The Commentary to °ABA *Standard* 4.42 provides that "[s]uspension should be imposed when a lawyer knows that [s]he is not performing the services requested by the client, but does nothing to remedy the situation, or when a lawyer engages in a pattern of neglect, with the result that the lawyer causes injury or potential injury to a client."

■ A period of suspension is the appropriate sanction for a pattern of neglect and isolated cases of abandonment. *See People v. Paulson,* 930 P.2d 582 (Colo.1997)(attorney suspended in default proceeding for one year and one day for, among other rule violations,

neglect of three client matters, failure to communicate in two matters, and failure to deliver funds or other property to the client and render a full accounting); *People v. Berkley,* 914 P.2d 338, 341 (Colo.1996)(attorney suspended for one year and one day for neglect of five separate matters and three instances of previous discipline); *People v. Crews,* 901 P.2d 472, 474 (Colo.1995)(suspending the attorney for two years for neglecting a legal matter including failing to prepare motion for modification of child support for five months after telling client he would do so, failing to timely respond to discovery requests, and failing to ensure that the court received documents attorney was ordered to prepare).

Determination of the appropriate sanction requires the PDJ and Hearing Board to consider aggravating and mitigating factors pursuant to ABA *Standards* 9.22 and 9.32 respectively. Stillman has received prior discipline, considered as an aggravating factor pursuant to ABA *Standard* 9.22(a): she received two letters of admonition, one in 1993 for neglecting a client matter, failing to communicate with the client, and making a misrepresentation to the client, and a second letter of admonition in 1995 for neglecting a client matter and failing to timely refund an unearned retainer. Stillman engaged in a pattern of misconduct, *see id.* at 9.22(c); she engaged in multiple offenses, *see id.* at 9.22(d), and her clients were vulnerable at the time of her misconduct, *see id.* at 9.22(h). Stillman did not appear at the trial; accordingly, no mitigating factors were provided to the PDJ and Hearing Board.

In imposing the sanction, the PDJ and Hearing Board consider the harm to the clients caused by the respondent's misconduct. The presumptive sanction recommended by the ABA *Standards* depends, in part, on the degree of injury or potential injury occasioned by the lawyer's misconduct. *See* ABA *Standard* 3.0(c)(providing that "[i]n imposing a sanction after a finding of lawyer misconduct, a court should consider the potential or actual injury caused by the lawyer's misconduct"). In the present case, Stillman's misconduct caused harm to her clients: Stillman did not resolve the contested custo-

dy dispute for Magnin, Linde was deprived of the opportunity to contest the reduction of the child support, and Groller lost the opportunity to make permanent the temporary restraining order. Magnin was forced to recreate her client file which Stillman failed to return to her, and Brock suffered monetary harm in the amount of $500 arising from the damage Stillman caused to his property. In all of the cases, except the Brock matter, the resolution of the clients' legal matters were unnecessarily delayed by Stillman's neglect.

### IV. ORDER

It is therefore ORDERED:

1. LOUSENDA DELEHOY STILLMAN, registration number 18005, is SUSPENDED from the practice of law for a period of two years, effective thirty-one days from the date of this Order;

2. Within sixty (60) days of the date of this Order, respondent shall provide Emily Magnin with her client file;

3. Within sixty (60) days of the date of this Order, respondent shall pay five hundred ($500) dollars to John P. Brock;

4. Respondent shall pay the costs of this consolidated disciplinary proceeding; complainant shall submit a Statement of Costs within fifteen (15) days of the date of this Order, and respondent shall have ten (10) days thereafter to file a response.

